Gaston, J.
 

 The bill in this case, which was filed on the last Monday of August, 1836, is brought by Margaret Tyson against Josiah Tyson and Elizabeth Ann Tyson. It states in substance that the plaintiff intermarried with Josiah Thomas Tyson, the son of the defendant Josiah; that the plaintiff’s husband has recently died, and that the defendant Elizabeth is his only child and heir at law. It charges that in the life-time of her deceased husband, one Henry Me-
 
 *138
 
 Kenzie conveyed to him a certain tract of iand in Moore county, containing about one hundred and twenty-four acres, adjoining the lands of Archibald McBryde, Lauehlin Cameron and Swegn McDonald, and of which the plaintiff is unable to give a more particular description; in which tract the plaintiff is entitled to have her dower, and that her said husband died seized of no other land whereof she could be endowed. The bill further charges that the plaintiff has not been able to obtain the dower, wbereunto she is so entitled, by reason of the fraud and injustice of the defendant Josiah, for that the said Josiah, in the life-time of her husband, and'when he was absent from home, obtained from the plaintiff, who had possession of her husband’s papers, the deed of McKenzie for the land so conveyed; under the pretence that there was some defeet therein, and upon the promise that he, the said Josiah, would procure from McKenzie another deed for the said land, in order to make the title of the plaintiff’s husband effectual; that having thus obtained the possession of said deed, which had not been registered, the defendant Josiah, instead of fulfilling the promise so made, obtained from McKenzie a conveyance to himself in fee simple of the said'tract, and either suppressed or destroyed the former deed, and thereupon claimed to be the absolute owner of the said land. . The prayer of the bill is, that the defendant Josiah may be compelled to surrender to the other defendant, the infant heir at law of her deceased husband, or to her guardian, the deed so fraudulently suppressed, in order that the same may be registered, or, if the deed aforesaid be destroyed, may be compelled to make unto the said infant a proper conveyance of his legal title in the land conveyed thereby, and that the plaintiff may have her dower allotted therein, and for. such other
 
 relief as the
 
 plaintiff’s case requires. The answer of the infant defendant is in the accustomed form, submitting her rights to the protection of the court. The defendant, Josiah Tyson, in his answer, does not admit the- death of the plaintiff’s husband, his son, but states that his said son was married to the plaintiff in 1831 or 1832, had by her one child, the defendant Elizabeth; then left the state and enlisted in the army of the
 
 *139
 
 United States, and in August, 1834 or 1835, wrote a letter to the plaintiff, his wife; and that since, “ there has been
 
 no
 
 positive and certain account of his death;” whereupon he prays that the plaintiff “ may be held to the proof thereof.” The answer further states, that in 1831, before the marriage of the defendant’s son, the defendant purchased two tracts of land in Moore county from Henry McKenzie, adjoining each other; one containing
 
 3TB
 
 acres, and the other 124 or 125 acres, and paid the entire purchase money for both, having bought them for his own use and benefit; that intending at some suitable time thereafter, should his son behave himself so as to deserve the defendant’s aid, to secure to him a portion of these lands, the a defendant took two several .deeds from McKenzie for these tracts, and caused the one for the sfnaller tract to be made in the name of his son; that both the said deeds were delivered to the defendant; and all this was done without his son’s knowledge, and without any intent of vesting any title in his said son in the smaller tract; that after his said son was married, the defendant built a good house on the said tract and settled his son thereon, who resided there about twelve months; that in the winter of 1832, the ¿defendant being absent from home, and a man of the name of Smith being desirous of purchasing both tracts, the defendant’s son, in order to be enabled to give Smith information respecting the location and boundaries thereof, went to this defendant’s house to procure the deed of conveyance therefor, (he being then ignorant of the existence of two deeds,) procured both the said deeds and carried them' home, where they remained until he afterwards went off and enlisted; that Smith did not make the contemplated pur-’ chase) and defendant was unapprized of the possession the deeds having been changed, until after his son had gone off. The defendant further states, that the sale of the two tracts by McKenzie had been made in pursuance of a power given to him as an executor, by the will of his father, Murdock McKenzie; that in the said deeds the sale was represented as made by McKenzie, in his individual capacity; that the defendant, being informed by Archibald Me-Bryde that the deeds were, on that account, invalid, and be
 
 *140
 
 ing informed that they liad been so removed to his son’s k°use: applied to the plaintiff for them and obtained them from her; that it is probable he did, on that occasion, men-tjon qte circumstance of the defects in them, but declares that this was not done by way of inducement to get the possession thereof, for he believed himself clearly entitled to that possession; that McKenzie being then about to remove to Alabama, defendant handed said deeds to James McJBryde, the son of Archibald McBryde, who prepared one deed for both tracts, and had the same executed; and thereupon, as defendant supposes, the two former deeds, which had never been registered, were surrendered, for that defendant has never seen them since; and that in 1834 or 1835 he sold and conveyed both the said tracts to Elias Harrington.
 

 To these answers there was a general replication, and the. parties proceeded to take their proofs. Upon these proofs the cause was heard at the last term, and, in regard to the principal matters therein controverted between the parties, we had no difficulty in forming a decided opinion. It then appeared to us as it yet appears, that
 
 the defendant
 
 Josiah, being about to settle his son upon his marriage, purchased the tract in question for
 
 him,
 
 had the deed in question made to
 
 him,
 
 received in
 
 his
 
 behalf the delivery of said deed, and kept the same for
 
 him, in the
 
 said defendant’s possession, until the month of January, 1832. It may have been that the son was not previously apprised of the deed having been so executed, nor even informed that the purchase was made in his behalf, but there is
 
 not the
 
 slightest evidence that the deed was delivered to the defendant as an escrow, or taken by him under any declared intent that it should not operate to convey the title according to its import. Two witnesses, present at the execution of the deed, have been examined, Neil Cameron and Henry McKenzie, of whom the former proves that the deed was prepared by him, that it purported to convey the land to the defendant’s son, was delivered in the witness’s presence and by him attested; and the other testifies that although he does not remember to whom the deed was made, he does know that the defendant ¡stated at the time that his son was about to be married, and
 
 *141
 
 that he bought the land for his son. No defect is alleged to have existed in this deed, except that it did not purport to have been made by McKenzie in his capacity of executor, and by virtue of the power given to him as such in the will of his testator. This was at most but an informality, and would not render the deed inoperative; so that there is no hesitation in declaring that under the said purchase and deed the plaintiff’s husband acquired the equitable title in the tract of land referred to in the pleadings, which, under our act of 1828, ch. 14, entitles his widow to be endowed thereof, and would also have acquired the legal title, save only that the ceremony of registration was necesssary to its completion. It is also equally clear that this deed has been suppressed and destroyed by reason of the defendant’s unfair conduct in relation thereto. His answer almost admits it; for it states that he might, when applying for McKenzie’s deeds, have represented to the plaintiff that he wished to have certain defects therein corrected, but denies that he made this allegation by way of inducement for the surrender of them, and he believed himself entitled to the possession thereof; but it does not state that he claimed the surrender of his son’s deed as a matter of right, nor that he made any’ other representation to induce the surrender of it. But if his answer had been an explicit denial of the plaintiff’s allegation in this respect, it would have been contradicted by the testimony of two witnesses, Neil Cameron and Nancy Cameron, who swear that he applied to Mrs. Tyson for this deed, because of the alleged defect in it, professing to act as her friend, and to have the matter rectified for her benefit. The destruction of the instrument, when the new deed was obtained from McKenzie, is proved • by James McBryde. There is no evidence of the conveyance alleged in the defendant’s answer to have been made by him to Harrington, before the filing of this bill.
 

 It may not be amiss to remark that we do not think the view taken of the main controversy in this case at all affected by the testimony of the several witnesses, who have been examined touching the negotiation of the plaintiff’s husband with the Smiths for the sale of both these tracts of land, and
 
 *142
 
 his obtaining the deeds for the purpose of ascertaining the l°cat*on ancl boundaries thereof. For if we give to this testimony the strongest effect which can be claimed for it by the defendant, it establishes no more than that the plaintiff’s husband was then unapprised oí his title by the deed in his father’s hands, and this ignorance cannot divest or impair it.
 

 In the defendant’s answer the plaintiff is called upon for proof of her husband’s death. The answer ought to have been excepted to as evasive and insufficient on that point, and the defendant should have been made to answer as to his information ánd belief; but as this was not done, and the fact of her husband’s death not admitted, it was necessary for the plaintiff to offer proof of the fact. For that purpose the depositions oí Macolm Buie and Angus McCaskill were read at the hearing. The first of these deposes that the supposed deceased left his family, as deponent believes, in the spring of 1831, and has never since returned; that it is understood and believed in the neighborhood that he is dead; that alter he went away it was reported that the body of a drowned man was found at New York, and it was supposed to be Tyson’s, but that it was afterwards reported, and that report obtained the more general credence, that he enlisted in the army and died after getting his discharge. The other deponent states that it was reported in the neighborhood that the deceased enlisted in the army under the name of Thomas A. Alexander — and that the deponent has seen a letter, since he was enlisted, part of which was written by him. This testimony not being entirely satisfactory as to the fact oí the death, or as to the time of it, we deemed ourselves justified in directing a special enquiry in relation thereto, and it is now reported to us by the commissioner as a fact that the said» Thomas is dead, and that he died before the last Monday of August, 1836.
 

 To this report exceptions have been taken by the defendant, Josiah Tyson, first for that the commissioner received in evidence sundry papers, certified from the auditor’s office ■ of the Treasury of the U. S. as communications to that office from its accounting agents not upon oath, and which are not evidence of the facts therein set forth; and 2nd, for that
 
 *143
 
 these, if evidence, tend to prove the death of one Thomas A. Alexander therein named, and do not establish the iden-~ tity of the person so named with the husband of the plaintiff. We do not hesitate to confirm the report, notwithstanding the exceptions; for, independently of the mattters -excepted to, there is satisfactory evidence to support the finding of the commissioner. It is proved by Mr. Deberry, the representative in Congress from that district, that in 1833 or 1834, he received a letter from the defendant, Josiah Tyson, requesting him to apply to the President of the United States for the discharge of his sen from the army of the United States, because of his low state of health, and communicating therewith a letter from the said Tyson to the plaintiff, informing her of his having enlisted under the feigned name of Thomas A. Alexander, of the place where he was stationed, of his very bad health, and of his wish to be permitted to return home; and that these letters were referred to the War Department, where the deponent has applied for them, and has received for answer that they cannot be found. And Mr. Deberry further testifies, that, at the close of that session, or at the commencement of the next session of Congress, the War Department accounted to him, as the attorney of the plaintiff, for the balance of pay due to her husband at his death, and for the value of his effects sold after his death under the orders and regulations of that Department. This testimony removes all reasonable doubt that could be entertained on the question.
 

 It is our opinion, therefore, that the plaintiff is entitled to be endowed of the land in question. Ordinarily, Courts of Equity do not decree between co-defendants; but it seems to us that this case falls within an established exception. Where a case is made out between defendants by evidence arising upon the pleadings and proofs between the plaintiff and defendants, it has been held that “ the defendant chargeable has a right to insist that he shall not be liable to be made a defendant in another suit for the same matter that may be then decided between him and his co-defendant; and the co-defendant may insist, that he shall not be obliged to institute another suit for a matter that may then be ad
 
 *144
 
 justed between the defendants.”
 
 Chamley
 
 v
 
 Dunsarey
 
 and others, 2 Sch. & Lef. 710 & 718. The decision that the plaintiff is entitled to her dower necessarily affirms the right 0f the infant defendant, subject to the plaintiff’s dower, in the land in question; and, as an infant, we feel it our duty to protect her rights while we compel her to perform her duty. We think, therefore, that the .decree should be, that the defendant Josiah should, by a proper deed to be approved of by the clerk of the court, convey the land in fee, with covenants of warranty against himself and all claiming under him, to the infant defendant, as land which, in Equity, belonged to the said infant’s father at his death; and thereupon a commission should issue to assign the plaintiff her dower. But inasmuch as the distinct boundaries of the land do not appear upon the pleadings, there must first be a reference to ascertain the same. The cause will be retained for further directions upon the coming in of the report.
 

 Per Curiam. Reference ordered accordingly.